PAUL A. KEANE, Appellant, v. BRIDGET M. KYNE, Respondent.

June 6, 1876.

1. It is error to compel a defendant to elect between two defenses, when both may be true. Such election can be compelled only when, if one defense be true, the other must necessarily be false.

2. The rule that a grantor in a fraudulent deed can have no relief against the effect of his own conveyance has no application to a conveyance made without any fraudulent design, and because of a misapprehension by the grantor concerning his legal rights.

3. Effect given by the Court of Appeals to preponderance of evidence in a chancery case.

APPEAL from St. Louis Circuit Court.

General term affirmed, special term reversed, and bill dismissed.

Jecko & Hospes and Sam Erskine, for appellant, cited: Henderson v. Henderson, Exr., 13 Mo. 151; Kelly v. John-

son, 28 Mo. 251 ; 2 Washb. on Real Prop. (3d ed.) 447, and note ; 4 Kent's Com. 305, and note ; Willis on Tr. 55 ; Sugden on Vend. (9th Lond. ed.) 170 ; Belden *v.* Seymore, 8 Conn. 312 ; Philbrook *v.* Delano, 29 Me. 410 ; 2 Story's Eq., secs. 1199–1201 ; Leman *v.* Whitney, 4 Russ. 422 ; Squire *v.* Hardin, 1 Paige, 494 ; 1 Story's Eq., secs. 297–300, and note ; Smith *v.* Bromley, Dougl. (Mich.) 695–697 ; Bump's Fr. Conv. 83 ; Curtis *v.* Perry, 6 Ves. jr. 746 ; Plattmore *v.* Staple, Coop. Eq. Pl. 250 ; Hill on Tr. 171, sec. 109 ; Rathburn *v.* Rathburn, 6 Barb. 78.

*Marshall & Barclay*, for respondent, cited : Morey *v.* Stanley, 54 Mo. 419 ; Hall *v.* Hoffman, 32 Mo. 519 ; Wag. Stat. 656, sec. 4, p. 1372, sec. 1 ; Poe *v.* Dornec, 54 Mo. 119 ; 1 Greenl. on Ev., sec. 40 ; Hill *v.* Bacon, 43 Ill. 477 ; Forrester *v.* Scoville, 51 Mo. 268 ; Dallam *v.* Renshaw, 26 Mo. 533 ; Kerr on Fraud, sec. 384 ; Bernecker *v.* Miller, 44 Mo. 102 ; Rumbolds *v.* Parr, 51 Mo. 592 ; Cravens *v.* Jamison, 59 Mo. 68 ; Story's Eq. Pl., secs. 241, 242 ; Orton *v.* Smith, 18 How. 263 ; Polk *v.* Pendleton, 31 Md. 118 ; Herrington *v.* Williams, 31 Texas, 448 ; Barron *v.* Robbins, 22 Mich. 35 ; Lake Road Co. *v.* Bedford, 3 Nev. 399 ; Harris *v.* Smith, 2 Dana, 11 ; Alton Ins. Co. *v.* Buckmaster, 13 Ill. 205 ; Schools *v.* Risley, 40 Mo. 356 ; Draper *v.* Shoot, 25 Mo. 197 ; Perry on Tr. (2d ed.), sec. 125 (class 5) ; 1 Lomax Dig., sec. 200 (class 3) ; Cloud *v.* Ivie, 28 Mo. 578 ; Perry on Tr. (2d ed.), sec. 124 ; Henderson *v.* Dickey, 50 Mo. 161 ; Jayne *v.* Boisgerard, 39 Miss. 796 ; Torrent *v.* Muskegon County, 22 Mich. 21 ; McAfee *v.* Lynch, 26 Miss. 257 ; Ross *v.* Young, 5 Sneed, 627 ; Huntingdon *v.* Allen, 44 Miss. 654 ; Matthews *v.* Leaman, 24 Ohio, 615 ; Johnson *v.* Hauston, 17 Mo. 58 ; Foster *v.* Reynolds, 38 Mo. 553 ; Smalley *v.* Hale, 37 Mo. 102 ; Nelson *v.* Broadack, 44 Mo. 596 ; Orton *v.* Smith, 18 How. 263.

LEWIS, J., delivered the opinion of the court.

The petition states that, from the 9th day of April, 1863,

plaintiff has been lawfully seized and possessed in fee simple of three certain lots in Kingsbury's addition to the city of St. Louis; that, only on the day before the filing of the petition, plaintiff was first informed that defendant pretended to have title to said lots by virtue of a deed purporting to have been executed by plaintiff and his wife to defendant, on February 10, 1873; that said deed is a forgery, and not the act or deed of plaintiff or his wife, and is a cloud upon plaintiff's title; wherefore plaintiff prays for the cancellation of said pretended deed, and for other appropriate relief.

The answer, after general denials, affirms the genuineness of the deed mentioned, and its sufficiency to convey the title of plaintiff to defendant. For a second defense it alleges that, on or about April 9, 1863, defendant's husband, Michael J. Kyne, since deceased, was owner of the real estate described in the petition, and, with defendant, his wife, executed a deed conveying the same to plaintiff; that this conveyance was without consideration, and was upon the express understanding and trust, then created and agreed upon by the parties, that plaintiff was to hold the naked legal title for the sole use and benefit of the said Kyne, and would reconvey to him, or to any other person, upon his request; that said conveyance was made, not to hinder, delay, or defraud any creditors or other persons interested in said estate, but only because the grantor was a person of pronounced sympathy for the cause of the armed rebellion then in progress against the government of the United States, and feared that the authorities of said government might undertake to confiscate his property on account of his said sympathy—the plaintiff being, at the same time, an obscure person, not likely to be molested on account of his political sentiments; that plaintiff never exercised any acts of ownership over said real estate; that the taxes were regularly paid by Kyne; that, on February

10, 1873, upon Kyne's request to that effect, plaintiff and his wife executed and delivered the deed conveying the property to defendant. Plaintiff replied, denying all the allegations in the answer antagonistic to his claim.

The Circuit Court, in special term, decreed for the plaintiff, declaring the deed of February 10, 1873, to be void, divesting all title to the land out of the defendant, and vesting the same in the plaintiff. This judgment was reversed in general term, whereupon plaintiff appealed.

In the course of the trial the court required the defendant to elect between her two defenses, ruling that she "could either deny the forgery only, or could admit the forgery, and amend so as to make the answer a cross-bill for relief, on the ground that Keane was a mere trustee for Mr Kyne in regard to the land in suit." This was error. There was no inconsistency between the two defenses. They might be equally true in point of fact. It is only when, if one defense be true, the other must necessarily be false, that a party may be required to elect upon which he will stand.

The defendant here refused to elect as required, whereupon the court refused to hear any testimony in support of the second defense. It is argued for the plaintiff that this action by the court was right, because it appears that the deed of Kyne to the plaintiff was voluntary, and made with a fraudulent intent. Authorities are cited to show that no relief against such a deed can be obtained by the grantor. But they fail of application to this case, for the reason that no fraudulent intent is here apparent. The Federal government could assert no claim to Kyne's land, by reason of his sympathy, of whatever description. His groundless apprehension, growing out of a misconception of his legal rights and of the fundamental principles of our beneficent form of government, might convict him of inexcusable ignorance. But this, although the country may have been at the time

overrun with teachers of constitutional law, could hardly be set down as either a crime or a fraud.

The question, how far a voluntary conveyance, not affecting, directly or indirectly, the rights of any third parties, may be treated as raising a resulting trust in favor of the grantor, has never been clearly determined in Missouri. The English doctrine, as applied to common-law conveyances, holds that a man cannot be supposed to part with his property without some benefit to be derived from the act; and, as he gets no other consideration, the presumption arises that he is to enjoy the use of the land in the hands of his grantee. American statutes regulating conveyances of real estate, including the statute of frauds, have given rise to many nice distinctions, and some contrariety of views, upon questions similar to the one directly concerned here. By some courts a material point is made upon the presence or absence of a general warranty in the deed. The record in this case contains no copy of the deed of 1863, nor any precise information of its form or contents. It would, therefore, be impracticable, even if desirable, for us to pursue the analogies and develop the analysis which would be essential to a satisfactory solution of the inquiry. The demand for such an undertaking, however, is really superseded by the conclusion we reach upon another point in the case.

Proceeding to consider, as is proper in chancery cases, the force of the testimony adduced on either side, with reference to the execution of the deed from plaintiff to defendant, we find it impossible to concur in the relative estimates adopted by the Circuit Court. In proof that the deed was fairly executed and delivered, we have (1) the direct testimony of the defendant, given from her personal knowledge of the fact; (2) the certificate of acknowledgment, with the official seal of the notary public; (3) the testimony of experts, accompanied by unusually

satisfactory elucidations, to the effect that. the signature upon the deed must have been written by the hand which traced the plaintiff's autograph in the presence of the court. Against this we have (1) the testimony of several witnesses who show that, at the date of the deed, and for some weeks before and afterwards, the plaintiff's arm was so dislocated that he could not write; (2) the plaintiff's own denial that he ever executed the deed, together with a reiteration of his physical disability at the date appearing on its face.

If the plaintiff's denial be true, it could be quite as much so without the wounded arm. The great prominence given to this minor fact is little calculated to help the denial. Under the alleged circumstances of Kyne's conveyance, in 1863, he might well have thought it prudent to have a deed from Keane, duly signed, long before the time when the date was to be filled in and the acknowledgment taken. Considering how frequently deeds are actually signed on days more or less removed from their written dates, the grantor's inability to write on a particular day can have little weight against the notarial seal and certificate of his acknowledgment. This invites an examination of the more direct testimony on either side. The plaintiff's emphatic denial of his signature might have been quite effective but for the extraordinary statements by which it was accompanied. He said:

"In 1863 he (Kyne) deeded that land to me. My wife paid him some money for it. *So she informed me.* I don't know how much. Don't know whether it was $1,000, $500, or $300; think it was about $250. *   *   * I don't know where that deed is now. Mr. Kyne never gave it to me. The reason I never got it was I never asked him for it. I had no talk with Mr. Kyne, before the making of that deed of 1863, about buying that land. *   *   * I never sent John to pay the taxes before Mr. Kyne's death.

Mr. Kyne paid all the taxes on that land up to his death, I never lived on the property; never had it inclosed; don't know whether Mrs. Kyne has had it inclosed. I never entered into any agreement with Mr. Kyne before that land was purchased. There was a payment made on the deed before it was made. It was made by my wife; not in my presence. He (Mr. Kyne) came and said he wanted money, and said he wanted to pay for that property, and I gave my wife some money, and she gave it to him. I don't know how long this was before the making of the deed of 1863. It might have been a year, and may be two years. She gave him about $250. I never took any receipt or memorandum of this money or payment. * * * I never asked him for the deed to that land made in 1863. I learned, after that deed was made, that payments on it had been made more than a year before. I know the payments were made, but we took no receipt. We had no talk previously with Mr. Kyne about buying that property. * * * Mr. Kyne paid the money for the taxes on that land from 1858 up to the time of his death. * * * I do recollect executing a security deed about that time, to that land, to Mr. Signaigo. It was a deed of trust for a thousand dollars. It was in 1869. I executed it at Mr. Kyne's request, and Mr. Kyne received the money and used it himself. I made no objections whatever to that. I never met Signaigo at all in that transaction. * * * I never got any of the money of the note; never asked Mr. Kyne for it. I never spoke to Mr. Kyne about that affair afterwards. I never tried to lease that land, or to sell it, or anything of that sort. * * * It was *both me and my wife* that managed the purchasing of that property."

Here is a *bona fide* purchaser of real estate for a valuable consideration, who is yet so indifferent about the details of his purchase, and the enjoyment of his property afterwards,

as (1) not to know whether the price he paid was a certain sum, or four times as much, although presently confident it was the smaller amount; (2) to know only by hearsay that he ever paid anything at all; (3) to have never received, or even asked for, a deed or any receipt or memorandum of the money paid; (4) to have purchased without a word of previous negotiation, direct or indirect, with the vendor; (5) to be able to say, nevertheless, that "both me and my wife managed the purchase;" (6) to pay no taxes on the land during an ownership of ten years; (7) to execute and deliver, at the request of another, a deed of trust upon the property for four times the amount of his purchase money, and yet receive none of the money borrowed, and never hear anything afterwards of the transaction or its consequences; (8) to exercise no single act of ownership during the ten years, nor yet to know whether another person had done so at any time; (9) to ignore both property and title, with all their incidents, until after the death of the party to whom he is alleged to have made a reconveyance, and also of the notary before whom that conveyance appears to have been acknowledged.

These proofs of the plaintiff's indifference might go far to excite a suspicion that he was also unmindful of the circumstance of his having signed the deed in question. They at least fail, with reference to his direct testimony, of that conclusive corroboration which will sometimes turn the scale between the opposing statements of respectable witnesses.

The direct testimony upon the other side of the issue embarrasses us with no such strain upon an ordinary fund of credulity. It may be that the plaintiff, as he testifies, did never execute the deed to Mrs. Kyne which he here asks to have canceled, but the preponderance of the testimony to the contrary is, in our estimation, conclusive of the whole case. We therefore affirm the general term's

reversal of the judgment at special term, and dismiss the plaintiff's bill. All the judges concur.