20  271
47   44
20  271
90  400

---

J. H. LEE ET AL., Plaintiffs in Error, v. S. M. DODD ET AL., Defendants in Error.

### St. Louis Court of Appeals, January 5, 1886.

1. PRACTICE—PLEADING—ELECTION BETWEEN DEFENCES.—A defendant can not be compelled to elect between two defences, both of which may be true, in fact.

2. ——— PLEADING—INCONSISTENT DEFENCES.—In an action in which the defendant claims no rights as against the plaintiff, under the contract sued on, he may set up its illegality and its performance.

3. CONTRACT—TENDER—ACCEPTANCE.— The acceptance of a tender made upon a condition distinctly expressed, or necessarily implied from the circumstances, is an acceptance of the condition.

4. APPELLATE PRACTICE—NON-SUIT.—The evidence being insufficient to take the case to the jury, the order refusing to set aside a non-suit which had been taken because of the court's instructions, will not be reversed.

ERROR to the St. Louis Circuit Court, W. H. HORNER, Judge.

*Affirmed.*

HENRY HITCHCOCK, for the plaintiffs in error: The second defence averred that the agreement between Dodd, Brown & Company, and Woods was unlawful and void, while the third defence. relied upon such agreement, although alleged to be void, as an accord and satisfaction. This is such inconsistency as the statute forbids. Rev. Stat., sect. 3523 ; *Fugate v. Pierce,* 49 Mo. 441, 449 ; *McAdow v. Ross,* 53 Mo. 203. The defendants' instruction, number six, not only was not based on the evidence, but was contradicted by it. The proof was positive and undisputed that Herrick, George & Graham executed the receipt of July 9, 1881, without authority, and without the knowledge or consent of the plaintiffs, and that said receipt was repudiated by the plaintiffs' attorneys forthwith, as soon as known to them ; nor was there any proof that the plaintiffs' attorneys received or collected said draft with any knowledge of what had been done. This instruction, as well as those above mentioned, was calculated to mislead the jury, and was wholly unsupported by the evidence. *Atkins v. Nicholson,* 31 Mo. 488 ; *Turner v. Chillicothe & D. M. City R. R. Co.,* 51 Mo. 510 ; *Lester v. Kansas City R. R. Co.,* 60 Mo. 268 ; *C. B. & Q. R. R. Co. v. Dickson,* 88 Ill. 431 ; *Howe S. M. Co. v. O. Layman,* 88 Ill. 39 ; *Hill v. Canfield,* 56 Pa. St. 454.

MADILL & RALSTON, for the defendants in error : The plaintiffs, by their reply, and by going to trial on

the pleadings, waived their motion to elect, and the error, if any, is the action of the court thereon. Bliss, Code Pl., ch. 20, sect. 420, p. 502 ; *Stevenson v. Judy*, 49 Mo. 227 ; *Scovill v. Glasner*, 79 Mo. 449–454, *et seq.* The acts of the parties constituted a perfect accord and satisfaction, executed by the tender and its acceptance. 2 Pars. Cont. (7 Ed) 817, *et seq.*, and *notes ; Babcock v. Hawkins*, 23 Vt. 561 ; 2 Whart. Cont., ch. 31, p. 350, *et seq.*, sects. 1001, 1002, and *notes ; Brooks v. White*, 2 Metc. 283 ; *Keeler v. Salisbury*, 33 N. Y. 648. This evidence clearly shows that the contract was executed under the above representations of Woods, as to the object, purpose, and effect of the erasure, and upon the faith of said representations. Hence, the execution of the contract upon the faith of such representations constitutes an equitable defence to any liability of the defendants under it above thirty-three and one-third per cent. of the claims therein set forth. *The State v. St. Louis Life Ins. Co.*, 3 Mo. App. 207 ; *Wheelton v. Hardisty*, 8 El. & Bl. 231, 273 to 283 ; *Wood v. Dwarris*, 11 Hurl. & G. Ex. 493–502, *et seq.*

THOMPSON, J., delivered the opinion of the court.

The facts in this case are very complicated, and have been set out in the statements of the opposing counsel with great fullness of detail. We shall limit ourselves to stating only what appears to be necessary for the purposes of this decision.

The plaintiffs' case, as claimed by them, is this : In June, 1881, Hunter Brothers, a firm of merchants at Wellington, Kansas, made an assignment to one Woods, under the Kansas statute, of their property, for the equal benefit of their creditors. Among these creditors were the plaintiffs, a mercantile firm doing business in Boston, and the defendants, a mercantile firm doing business in St. Louis. After the assignment, such negotiations were had between the assignee, the defendants in this suit, and representatives of other creditors, that a contract was entered into between the assignee and the defend-

ants, by which the assignee turned over all the assets of Hunter Brothers, so assigned to him, to the defendants, in . consideration of an agreement on their part, among other things, to pay the debts due by Hunter Brothers to their other creditors, among them, an indebtedness to these plaintiffs in the sum of $2,308.61. The plaintiffs' bring the present suit upon this contract, admitting that an amount equal to thirty-three and one-third per cent. of the indebtedness of Hunter Brothers to them has been paid by these defendants, and suing for the balance with interest.

The answer, among other things, admits that Hunter Brothers were indebted to these plaintiffs in the sum above named, and admits that the contract sued on (which was in writing, filed as an exhibit with the petition) embodied certain features of the agreement which was made, and then proceeds to set up three separate defences. The substance of the first is, that the plaintiffs agreed with Hunter Brothers to settle their claim against Hunter Brothers for thirty-three and one-third cents on the dollar, together with the unsecured notes to Hunter Brothers for forty per cent. additional, which payment of thirty-three and one-third cents on the dollar has been made by these defendants for Hunter Brothers, and which notes have been tendered to the plaintiffs and refused ; whereby there has been an accord and satisfaction. The second pleads the provisions of the statute of Kansas, relating to assignments for the benefit of creditors, and sets up that the contract between Woods, the assignee, and these defendants, whereby Woods assumed to turn over to these defendants all the assigned assets of Hunter Brothers, instead of administering them under the orders of the district court for the benefit of the creditors of Hunter Brothers, as required by the statute, was illegal and void. The third sets up in a somewhat different manner, the defendants' version of the contract as stated in the first ; alleging, in substance, a compromise agreement between Hunter Brothers, Woods, their as-

signee, these defendants, and the representatives of certain creditors, whereby the assigned assets in the hands of Woods were to be turned over to these defendants, they paying Woods (who is a secured creditor) a certain sum ; paying to the other creditors who were parties to the agreement, thirty-three and one-third per cent. of their demands against Hunter Brothers, and undertaking to satisfy the creditors who were not parties to the agreement ; charging that these plaintiffs had an additional secret agreement unknown to the defendants, whereby they were to get, in addition to this thirty-three and one-third per cent. of their demand, the unsecured notes of Hunter Brothers, "payable in a reasonable time;" and that, afterwards and before the bringing of this suit, these notes were delivered to the duly authorized agents of the plaintiffs. It also sets up that this composition agreement, as originally drawn up, obliged the defendants to pay the debts of Hunter Brothers, "only to the sum of $2,650, on the basis of thirty-three and one-third per cent.," and explains how this clause came to be stricken out at the request of the assignee and for his protection.

I. A reply was filed in the usual form denying the new matter set up in the answer. More than a year thereafter, the cause came on for trial, and a special jury was impaneled, and then the plaintiffs moved the court to compel the defendants to elect between their second and third defences, which motion the court overruled. We think the motion was correctly overruled. There was no repugnance of fact between the two defences. Both might be true. And the rule is, that where two defences are pleaded, the defendant can not be driven to an election, where both may be true. *Keane v. Kyne*, 2 Mo. App. 317. The contract may have been made according to the version of it given by the defendants in their third separate defence, and if valid under the law of Kansas, it would constitute a good defence to the action. At the same time, the defendants might be able to prove that the law of Kansas was as alleged in their

second count, and this, if true, might, as a mere conclu-
sion of law, prevent the plaintiffs from recovering. The
defendants do not claim any right, as against the plain-
tiffs, under the contract sued on. They are thus in a
position to set up both its illegality and its performance.
It would be otherwise if the establishment of the contract
were an essential element of the defence.

The cause then went to trial, and in consequence of
the rulings of the court in admitting evidence and giving
and refusing instructions, the plaintiffs were driven to a
voluntary non-suit.

II.    The evidence was conclusive upon the following
points : that Tenney, Flower & Cratty, attorneys of
Chicago, Illinois, were the attorneys of the plaintiffs,
with full power to bind them by a settlement such as the
one which was here made ; that MacLaren, an employe
of Tenney, Flower & Cratty, had whatever power they
had in the premises ; that Page was the agent of the
defendants ; that Herrick, George & Graham, attor-
neys, of Wellington, Kansas, were the attorneys of
Hunter Brothers ; that MacLaren had been to Wellington
soon after the failure and had made a proposition of set-
tlement, which had not been accepted, and that he had
returned to Chicago, leaving no legal representative of
the plaintiffs on the ground, but with the understanding
that Herrick, George & Graham would inform Tenney,
Flower & Cratty if anything important transpired ; that
Page, being at Wellington, representing the defendants,
on the seventh of July, 1881, Herrick, George &
Graham, telegraphed to Tenney, Flower & Cratty, as
follows :

"If creditors will all accept thirty-three and one-
third cents on the dollar on claims against Hunter
Brothers, payable in thirty, sixty, and ninety days, se-
cured, settlement can be made : will your clients accept ?
Answer."

To which Tenney, Flower & Cratty responded by
telegraph as follows :

"No, but we will take the settlement and debtors'

unsecured notes for forty cents additional, and give them time."

No acceptance of this counter. proposition was communicated in terms to Tenney, Flower & Cratty, at the time.

On July 7, at the time their telegram was sent, Herrick, George & Graham wrote a letter to Tenney, Flower & Cratty, also, offering thirty three and one-third per cent. in settlement of all claims, explaining the situation at some length, and concluding as follows:

"If you have not already arranged the matter when this reaches you, please telegraph us at once whether your clients will accept; we feel sure that this is the very best thing that can be done."

To this letter, MacLaren, for Tenney, Flower & Cratty, replied on July 11, declining the proposition, but repeating the offer made in their telegram of July 8.

On July 13, Herrick, George & Graham telegraphed Tenney, Flower & Cratty, at Chicago, as follows:

"Woods, assignee of Hunter Brothers, has advertised to sell stock under his chattel mortgage, nineteenth inst. Proposition still standing for thirty-three and one-third to creditors."

To which Tenney, Flower and Cratty replied by telegraph, as follows:

"Our offer was final. Woods sells at his peril. We can stand it if your clients can."

Herrick, George & Graham were the attorneys of the debtors, Hunter Brothers, and in June they had telegraphed and written to Tenney, Flower & Cratty that they could not represent the plaintiffs for this reason. Nevertheless, while so continuing to act as the attorneys of Hunter Brothers, they did, in the absence of Tenney, Flower & Cratty, assume to represent these plaintiffs. They notified the defendants' agent that the plaintiffs had accepted the defendants' proposal to take the assets in the hands of the assignee, and to settle with the credi-

tors other than Woods and certain others, as already stated, by paying them thirty-three and one-third cents on the dollar. In pursuance of this representation, the defendants drew their check for the amount of thirty-three and one-third per cent. of the plaintiffs' demand against Hunter Brothers, not in favor of the plaintiffs, or in favor of Tenney, Flower & Cratty, the plaintiffs' attorneys, but in favor of Herrick, George & Graham, attorneys; and Herrick, George & Graham thereupon assumed to give the defendants a receipt, as follows:

"Wellington, Kansas, July 19, 1881.

"Rec'd of Dodd, Brown & Co., dft. for $769.54, in full payment of J. H. Lee & Co.'s account against Hunter Brothers.

"J. H. LEE & Co.,
"By HERRICK, GEORGE & GRAHAM,
"Attorneys."

They never informed the plaintiffs, or Tenney, Flower & Cratty, that they had assumed to do this, but they forwarded the defendants' check to Tenney, Flower & Cratty, on the same day, with the following letter:

"GENTLEMEN: Enclosed we hand you draft, $769.54, to apply to claim of J. H. Lee & Company against Hunter Brothers. Dodd, Brown & Company take stock and pay creditors thirty-three per cent.; we will look after other matters and report soon.

"Very respectfully,
"HERRICK, GEORGE & GRAHAM."

On receipt of this letter, Tenney, Flower & Cratty replied as follows:

"GENTLEMEN: Your kind favor of the nineteenth is at hand with draft, H. L. Page on Dodd, Brown & Company, $769.54, on account of J. H. Lee & Company, and same will be credited on same. Be kind enough to give us full particulars of sale and general arrangements of the estate. We rely on you to post us, as we particu-

larly wish to avoid any conflict with you in this matter.
Do all you consistently can, and oblige,

"Yours truly,

"TENNEY, FLOWER & CRATTY,

"Per MACLAREN."

Subsequently, in August, and afterwards in September, Tenney, Flower & Cratty wrote to Herrick, George & Graham, inquiring how matters stood, and getting no satisfactory answer, placed the plaintiffs' claims in the hands of another attorney at Wellington, who, for the first time, discovered and communicated to Tenney, Flower & Cratty the settlement that Herrick, George & Graham had assumed to make for the plaintiffs. Perhaps a month later they learned from the defendants that Herrick, George & Graham had assumed to give them the acquittance above set out, signing the name of the plaintiffs to it. On making this last discovery, Tenney, Flower & Cratty wrote on December 6, 1881, to the defendants, informing them, in substance, that Herrick, George & Graham had no authority to sign the acquittance for the plaintiffs. On the same day they wrote to Herrick, George & Graham as follows:

"GENTLEMEN: Dodd, Brown & Company, of St. Louis, claim to hold a receipt signed by you, receipting for the account of J. H. Lee & Company, in full. What does this mean? We expressly refused to accept thirty-three and one-third per cent., and we are not aware how you undertook to act for Lee & Company. You refused by wire, by letter, and personally to the writer, to accept charge of this claim; and we are entirely at a loss to understand the present aspect of affairs. Kindly explain at length, as, under the agreement made between Dodd, Brown & Company and John G. Woods, we are about to compel Dodd, Brown & Company to pay the balance of the account. Your early reply is requested, as we desire to bring suit at St. Louis at once.

"Truly yours,

"TENNEY, FLOWER & CRATTY,

"Per MACLAREN

"We employed other counsel at Wellington for the very reason that you could not act."

To this letter, Herrick, George & Graham replied, under date of December 8, as follows:

"GENTLEMEN: Yours of the sixth inst. just received, and in reply say that we have seen Messrs. Hunter Brothers, and they promised us to fix it up at once, according to your proposition, for Lee & Company. Messrs. Herrick and George are both absent from the city, and we are not able to give you a full statement of this matter with Dodd, Brown & Company, but think there was an agreement that they should not pay to exceed thirty-three and one-third per cent. on Lee & Company's claim. There must be a mistake about their having our receipt for Lee & Company's claim in full, or even in part. We refused to act for Lee & Company, for the reason that we represented Hunter Brothers, but after receiving your proposition in regard to what Lee & Company would do, we presented the matter to Hunter Brothers, and they agreed to accept the proposition, and went on with their negotiations with Dodd, Brown & Company. After they had agreed with Dodd, Brown & Company, they neglected to carry out their promise with Lee & Company, and we corresponded with you at once. We told you we could not get Hunter Brothers to do anything. We have always advised and requested them to carry out and settle under Lee & Company's proposition. They now agree to do it, and say it has been merely a neglect. We will forward the letter this week. Hoping this will be satisfactory,
  "We are,
      "Yours very truly,
          "HERRICK, GEORGE & GRAHAM."

On December 13, Herrick, George & Graham wrote again to Tenney, Flower & Cratty, as follows:

"GENTLEMEN: According to promise, we forward herewith Hunter Brothers' notes to J. H. Lee, which, we

trust, will be satisfactory.    We believe the notes will be promptly paid.

"Very truly yours,
"HERRICK, GEORGE & GRAHAM."

In this were enclosed two notes, signed "Hunter Brothers," dated Wellington, Kansas, July 19, 1881, each for $461.72,  payable respectively at two and three years after date, to the order of J. H. Lee & Company, at John G. Woods' Bank, Wellington, Kansas, with interest at six per cent. from date.

Immediately on receiving this letter, with the notes enclosed, MacLaren telegraphed Herrick, George & Graham that the notes were absolutely refused, and were returned by mail; and did, on the same day, December 16, return the notes to them by mail, in the following letter:

"MESSRS. HERRICK, GEORGE & GRAHAM, Wellington, Kansas:

"GENTLEMEN:  As we wired you, we will decline absolutely to receive the notes of Hunter Brothers.    It is, as we view it, perfectly clear that we can recover the full amount of our debt, and we shall at once proceed to do so.  We return the notes herewith.

"Truly yours,
"TENNEY, FLOWER & CRATTY."

Before indicating our views upon the various points made by the defendants, we will say that we do not doubt the soundness of any of the following propositions: (1) That a proposal in writing, which is so indefinite that it can not form the basis of a contract without further specification; one that is so indefinite that equity could not decree a specific performance of it; and an acceptance of such proposal, does not make a binding contract. (2) That where a proposal for a contract is communicated by letter, an acceptance, in order to bind the sender of the proposal, must be communicated to him within a reasonable time.    (3) That what is a reasonable time is ordinarily a question of fact for the jury.    (4) That a

party to whom a proposal for a contract is sent does not accept it so as to bind the proposer and make it a contract, by merely telling his own attorney that he accepts it, or by telling some third person that he accepts it.

But we understand it to be an equally sound proposition that, in order to make a binding contract, the acceptance of a proposal need not be by express words; it may equally be shown by acts which indicate clearly an unmistakable purpose of the party to whom the proposal was made to accept it as made. Pollock, Cont. 46.

Now, it is quite plain, from the foregoing statement, that the plaintiffs' right of recovery is predicated upon the contract as made between the assignee, Woods, and the defendants, and that, in order to their success, it is necessary to keep the terms of the contract narrowed down to this written instrument. The defendants' defence, on the other hand, is predicated upon the ground that this written instrument did not fully embody the contract as made; that outside of this instrument there was a contemporaneous agreement on the part of the plaintiffs that the defendants should pay them no more than thirty-three and one-third cents on the dollar.

The defendants seem to have regarded it as very material to their defence to show that Herrick, George & Graham were the agents of the plaintiffs appointed by Tenney, Flower & Cratty, through MacLaren, to enter into this contract of settlement. As those gentlemen are not parties to the record, we refrain from making such observations as we might otherwise feel bound to make, upon the position which they saw fit to assume in the case. It is sufficient to say that, if their own version and that of the defendants is correct, they assumed to represent both parties to a controversy, the creditor and the debtor; while if the plaintiffs' contention is correct, they, while representing the debtors, assumed, without any authority, to represent a firm of creditors, also, and to sign their name to an acquittance of their demand. We have examined the record with great care, and are of opinion that it contains no substantial evidence that they

received authority from the plaintiffs, or from Tenney, Flower & Cratty, to do more than to advise Tenney, Flower & Cratty, from time to time, of what it might be to their interest to know. The evidence is consistent only with the conclusion that in their correspondence with Tenney, Flower & Cratty, they represented Hunter Brothers, and were not acting as the agents of the plaintiffs through Tenney, Flower & Cratty. They were not principal and agent, but representatives of adverse parties to a negotiation. They were the general business correspondents of Tenney, Flower & Cratty, in the matter of collections of legal business, and keeping in view that relation, we can understand why Tenney, Flower & Cratty should have confided in them, and should have requested them to communicate to them any important events in the case so far as they could consistently do it. Beyond this, we can see no substantial evidence of any agency for the plaintiffs.

This being so, the mere statement of Hunter Brothers to Herrick, George & Graham that they accepted the proposal of Tenney, Flower & Cratty embraced in their telegram of July 8, was not a notification to Tenney, Flower & Cratty of the acceptance of the proposal, because it was a mere communication to their own attorneys. Nor was their statement to Page, the agent of the defendants, of their acceptance of it, such a notice of acceptance as would bind the plaintiffs, because Page was not and did not profess to be the agent of the plaintiffs. But when Herrick, George & Graham, on July 19, wrote to Tenney, Flower & Cratty, enclosing the draft of defendants for one-third of the plaintiffs' claim, "Enclosed we hand you draft, $769.54, to apply on claim of J. H. Lee & Company against Hunter Brothers; Dodd, Brown & Company take stock and pay creditors thirty-three per cent," Tenney, Flower & Cratty could only understand one of two things; either that their proposal had been accepted by Dodd, Brown & Company and by Hunter Brothers as made, or that Dodd, Brown & Company had renewed in a more demonstrative form

their proposition to pay to the plaintiffs one-third of their demand against Hunter Brothers, in consideration of receiving the assets of Hunters Brothers, in the hands of the assignee. They could not understand it as meaning that Dodd, Brown & Company took the assets and paid one-third of the plaintiffs' claim on account, and held themselves bound to pay the balance, or any of the balance. That draft coming on with the explanatory letter of Herrick, George & Graham was a distinct notification to them, as plain and unequivocal as though the negative words had been used, that Dodd, Brown & Company would not take the assets and pay more than thirty-three and one-third cents on the dollar. It was a tender upon that condition; and it is an elementary principle that where a tender is made upon a condition, the party accepting the tender accepts also the condition. *Adams v. Helm*, 55 Mo. 468; *Kronenberger v. Binz*, 56 Mo. 121.

That tender was in substance and legal effect the same as though the defendants had said to the plaintiffs: "We here tender to you one-third of the debt which Hunter Brothers owe you on condition that you will release your equity in their assigned assets and exonerate us from any further liability to you." By accepting the draft and collecting the amount of money for which it was drawn, they in effect agreed with the defendants to this proposal. If they had not agreed to it, it was their duty to speak then by returning the draft; and not having spoken then, they are precluded from speaking now. Their acceptance of the draft with complete knowledge of the condition upon which it was tendered, was equivalent to an accord and satisfaction of so much of the contract sued on as obligated the defendants to pay to them the full amount of their claim.

If this is the correct view, it can not be regarded as material that Hunter Brothers did not forward their notes for the additional forty per cent. immediately, or that the notes, when forwarded, had two or three years respectively to run. The defendants nowhere throughout

the transactions obligated themselves to see to the execution, on the part of Hunter Brothers, of their portion of the contract. What the defendants proposed to do was clearly severable from what Hunter Brothers proposed to do, and when the plaintiffs, through their attorneys, accepted from the defendants all that they proposed to give, with a distinct notification that it was all that they proposed to give, they estopped themselves from demanding any more.

If any further observations were required upon this record it might be said that this action is evidently the result of an afterthought. When Tenney, Flower & Cratty discovered that the contract between the defendant Woods, the assignee, did not limit the defendants to the payment of thirty-three and one-third cents on the dollar, it occurred to them that they might repudiate the arrangement and recover the whole amount from the defendants. The law does not allow parties to play fast and loose in this way.

The only remaining question is, the proper disposition to make of the case. We do not think it necessary to consider the propriety of the rulings of the court in giving and refusing the voluminous instructions which were offered by the opposing parties; because we think upon the whole evidence the plaintiffs had no case to go to the jury. We understand it to be a sound rule of practice where the plaintiff has been driven by the instructions of the court to a voluntary non-suit, that the order of the court overruling the motion to set aside the non-suit will not be reversed if it appear on the whole record that the court might have directed a non-suit. Any errors in giving or refusing instructions in such a case become immaterial.

The judgment is accordingly affirmed. It is so ordered. All the judges concur.